**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-1831-WJM-MEH

Consolidated with:   1:12-cv-2527-WJM-MEH
                     1:12-cv-2635-WJM-MEH

SALEEM MOHAMMED, derivatively on behalf of Chipotle Mexican Grill, Inc.,

        Plaintiff,

v.

M. STEVEN ELLS, *et al.*,

        Defendants,

CHIPOTLE MEXICAN GRILL, INC.,

        Nominal Defendant.

---

**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL
OF DERIVATIVE ACTION AND GRANTING
UNOPPOSED MOTION FOR ATTORNEYS FEES**

---

On April 18, 2014, the Court entered an Order preliminarily approving the

proposed Settlement of this action, approving and directing notice to the shareholders,

and setting a final fairness hearing on the settlement.  (ECF No. 83.)  The Court held a

fairness hearing on August 20, 2014.  (ECF No. 95.)  Having considered the arguments

raised in the briefs and at the hearing, and for the reasons set forth below, the Court

grants Plaintiff's Unopposed Motion for Final Approval of Derivative Action (ECF No.

89) and Plaintiff's Unopposed Motion for Attorneys' Fees (ECF No. 90).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a 2010 investigation conducted by the United States

Immigration and Customs Enforcement ("ICE") into work authorization for Chipotle's employees.  ICE's investigation, and Chipotle's response to that investigation, led to approximately 450 employees being terminated in Minnesota due to lack of valid work authorization.  Similar audits conducted in Virginia and the District of Columbia led to the termination of at least 50 more employees.  In the wake of these investigations, Chipotle also received a subpoena from the Securities and Exchange Commission, and an investigation by the U.S. Attorney for the District of Columbia.

Per the allegations in the Complaint, at the time this action commenced, Chipotle had spent over $1,000,000 on legal fees.  Chipotle also suffered the costs incurred in training new employees to replace those without valid work authorization, disruptions to operations due to the new employees, and negative publicity.  Moreover, on the day the U.S. attorney announced his investigation, Chipotle's share price dropped two percent.

On July 12, 2012, Plaintiff Ralph B. Richey filed an action on behalf of Chipotle Mexican Grill, Inc. against Chipotle's Board of Directors ("Board") for breach of fiduciary duty related to the Company's failure to comply with employee work authorization requirements.  (ECF No. 1.)  Richey sought a declaration that the Board had breached its fiduciary duties, monetary damages in an amount necessary to compensate Chipotle for the harm caused by the breach, and attorneys' fees and costs for this litigation.  (*Id.*)  Richey was represented by attorneys from Charles Lilley & Associates, PC, Rigrodsky & Long, P.A., and Levi Korsinsky.  (*Id.*)

On September 21, 2012, Joanne Nelson filed a similar suit on behalf of Chipotle and its shareholders against Chipotle's Board of Directors.  (Case No. 12-cv-2527, ECF No. 1.)  Nelson was represented by attorneys from Robbins Umeda LLP, the Briscoe

2

Law Firm, and Powers Taylor LLP.  (*Id.*)

On October 4, 2012, a third shareholder derivative lawsuit was filed by Francis Schmitz.  (Case No. 12-cv-2635, ECF No. 1.)  Schmitz was represented by attorneys from Faruqi & Faruqi, and Jeffery M. Villanueva, P.C.  (*Id.*)

On November 15, 2012, Plaintiffs Nelson and Schmitz filed a joint Motion asking the Court to consolidate the three shareholder derivative actions, and to appoint as co-lead counsel Robbins Umeda and Faruqi & Faruqi.  (ECF No. 16.)  Defendants agreed that consolidation was appropriate and took no position as to the Plaintiff's attorney leadership structure.  Plaintiff Richey did not oppose consolidation, but asked that his counsel be appointed as lead counsel.  (ECF No. 18.)  On January 17, 2013, the Court consolidated the three cases with Plaintiff Richey's case being the lead case, and appointed the law firms of Rodrodsky & Long, P.A. and Levi & Korsinsky LLP as lead counsel, with Charles Lilley & Associates, P.C. as local counsel. (ECF No. 29.)

On March 20, 2013, Plaintiff Richey filed an amended complaint in the consolidated action, which is the operative pleading in this case.  (ECF No. 38.)  Shortly thereafter, Saleem Mohammed was substituted for Ralph Richey as the named Plaintiff in the consolidated action.  (ECF No. 43.)

In April 2013, Defendants sought a stay of this litigation pending the outcome of the ongoing investigations into Chipotle's employment verification practices.  (ECF No. 52.)  The Magistrate Judge granted the stay in part, and directed the parties to file a motion to dismiss that addressed only justiciability, given the pending investigations and related securities class action litigation.  (ECF No. 58.)  Defendants filed their motion to dismiss in May 2013.  (ECF No. 61.)

3

In July 2013, Defendants filed a status report stating that United States District Judge Phillip A. Brimmer had dismissed the related securities class action litigation. (ECF No. 67.)  As the briefing on Defendants' motion to dismiss relied heavily on the pending class action litigation, the Court ordered the parties to file supplemental briefs addressing the current posture of the case.  (ECF No. 68.)  The supplemental briefing was filed in September 2013.  (ECF Nos. 77-78.)

In March 2014, the parties filed a Motion for Preliminary Approval of Derivative Action Settlement and Notice to Shareholders.  (ECF No. 80.)  The proposed settlement calls for Chipotle to enact corporate governance reforms aimed at improving the Board's oversight of hiring processes and procedures, particularly related to work authorization status.  (ECF No. 81-1.)  With the new reforms in place, the audit committee of the Board will receive at least biannual reports from Chipotle's Director of Compliance regarding employment compliance practices and procedures, and adherence thereto.  (*Id*. at 27.)  The settlement outlines many of the items that must appear in those reports, and directs that these reforms must remain in place for at least three years.  (*Id*. at 27-29.)

Given the parties' settlement, the Court denied Defendants' Motion to Dismiss without prejudice to refiling if the settlement is not fully and finally approved.  (ECF No. 82.)  On April 18, 2014, the Court preliminarily approved the parties' settlement, directed that notice be provided to all shareholders, set a deadline for shareholders to object to the settlement, and set a final fairness hearing.  (ECF No. 83.)  On May 19, 2014, Chipotle posted a Notice of Settlement of Derivative Action to the front page of its corporate website, which remained active until August 6, 2014.  (ECF No. 92-2.)  Also

in May 2013, Chipotle caused notices of the settlement to be mailed to all shareholders. (ECF No. 92-1.)  As of August 2014, notices had been mailed to 923 shareholders. (*Id*.)

The deadline for objecting to the proposed settlement was August 6, 2014. (ECF No. 94.)  No objections, timely or otherwise, were filed with the Court or with either of the parties.  (*Id*.)

On July 31, 2014, Plaintiff filed his Unopposed Motion for Final Approval of Settlement (ECF No. 89) and Unopposed Motion for Attorneys' Fees (ECF No. 90). The Court held a fairness hearing on August 20, 2014, during which the attorneys set forth their arguments as to why the Court should approve the settlement and the unopposed attorneys' fees.  (ECF No. 95.)  No shareholder appeared at the hearing to object to the settlement.  (*Id*.)  The Court granted the Motions and stated that it would issue this Order more fully setting forth its findings as to fairness of the settlement and reasonableness of the attorneys' fees.  (*Id*.)

## II.  MOTION FOR FINAL APPROVAL OF SETTLEMENT

"Before approving the settlement of a shareholders' derivative action . . . , the district court must determine that there has been no fraud or collusion in arriving at the settlement agreement, and that it is fair, reasonable, and adequate."  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also* 10 Federal Procedure, Lawyers Edition § 25:175 ("The general standard used to evaluate a settlement [in a derivative shareholder action] is that it must be fair, adequate, and reasonable, and not the result of fraud or collusion, and that it must be in the best interests of the parties.").

The Court finds that the settlement has been negotiated at arm's length and arrived at in good faith, there being no evidence of fraud or collusion between the parties.  *See Maher*, 714 F.2d at 456-57 (stating that a factor favoring approval of a derivative litigation settlement is that it "was the result of arm's-length negotiation, after extensive discovery and intelligent evaluation of the lawsuit by the parties and their capable counsel").  Counsel for both sides stated at the fairness hearing that negotiations were vigorous and occurred over a number of months.  The attorneys involved in this matter are experienced in shareholder derivative litigation, and there is no evidence suggesting that they negotiated in anything other than good faith to reach the proposed settlement.

The Court also finds that the proposed settlement is reasonable, considering the claims at issue in this case.  Plaintiff's success on the merits was far from certain. Indeed, with Defendants' Motions to Dismiss still pending at the time of the settlement, Plaintiff's prospects for success in this action were certainly in question.  At the fairness hearing, Plaintiff's counsel candidly admitted that, had his claims survived the pending Motion to Dismiss on grounds of justicability, he would have then been required to overcome the hurdle of pleading sufficient facts to show that a making a presuit demand on the Board would have been futile.  The Court finds that the significant uncertainty Plaintiffs faced had they pursued this litigation weighs in favor of approving the settlement.  *See id.* at 455 ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable. The courts, therefore, do not lightly reject such settlements.").

The Court also finds that the terms of the settlement are fair and adequate.  The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees) does not weigh against approval of the settlement.  To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action.  Plaintiff's claims in this case challenged the Board's oversight of employee hiring—particularly with regard to work authorization compliance—and the reforms are specifically directed at increasing this oversight.

As such, the Court finds that the settlement directly addresses the alleged cause of the harms suffered by shareholders, and is fair and adequate, even in the absence of a monetary recovery.  *See id.* at 466 ("[A] settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action is brought, even though no direct monetary benefits are paid by the defendants to the corporation."); *Zimmerman v. Bell*, 800 F.2d 386, 391 (4th Cir. 1986) ("Influencing the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted 'even though no direct monetary benefits are paid by the defendants to the corporation.'") (quoting *Maher*, 714 F.2d ); *Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex. 2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward").

7

Finally, the fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. 2009) ("The reaction of the class to the proffered settlement . . . is perhaps the most significant factor to be weighed in considering its adequacy . . . .") (quotation marks and brackets omitted); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("Both the utter absence of objections and the nominal number of shareholders who have exercised their right to opt out of this litigation militate strongly in favor of approval of the settlement.").

Based on these considerations, the Court finds good cause to order final approval of the settlement entered into between the parties to this action.

## III.  MOTION FOR ATTORNEYS' FEES AND EXPENSES

The Court also finds good cause to award Plaintiff's counsel their requested attorneys' fees and expenses in the amount of $525,000.  (ECF No. 90.)

Attorneys' fees are properly calculated by determining the "lodestar"—the number of hours reasonably expended multiplied by reasonably hourly rates—and then adjusting the lodestar figure, if appropriate, by considering one or more of the factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson*

factors").[1]  *See, e.g.*, *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102-04 (10th Cir. 2010); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1355-56 (10th Cir. 1992).

Plaintiff's counsel represents that the appropriate lodestar figure in this action is $638,955.25, based on 1,340.87 hours of attorney time.  (ECF No. 90.)  The Court has considered the complexity and procedural history of this case, the hours expended by counsel relative thereto, and reviewed the hourly rates charged by counsel, including typical rates in counsel's various geographic locations, and finds that the attorneys' billing practices were reasonable.

The Court also finds that Plaintiff incurred $9,571.47 in expenses, and that this amount is reasonable.  Subtracting the $9,571.47 in expenses from the entire requested amount of $525,000 leaves a total request for attorneys' fees in the amount of $515,428.53.  Thus, Plaintiff's counsel is requesting that the Court apply a multiplier of approximately 0.81 to the lodestar figure of $638,955.25.  The Court finds it appropriate to apply the very modest multiplier of approximately 0.81 to arrive at the total fee award of $515,428.53 and the total award of fees and expenses of $525,000. *Cf. In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) (applying 2.75 multiplier to lodestar figure in shareholder derivative suit

---

[1] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See id.* at 717-19.

9

in which Plaintiff's counsel worked on contingency in the face of considerable risk and uncertainty); *see also Miniscribe Corp. v. Harris Trust Co. of Cal.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57 in class action); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *3-*4 (D. Colo. Dec. 22, 2010) (applying 1.82 lodestar multiplier in class action); *Lucas v. Kmart Corp.*, 2006 WL 2729260, at *9 (D. Colo. July 27, 2006) (applying 1.87 lodestar multiplier in class action).

The scope and nature of the work required by Plaintiff's counsel during this case, the complexity of the case, and the fact that Plaintiff's counsel was working on contingency basis all weigh in favor of a significant attorneys' fees award in this action. *See Johnson*, 488 F.2d at 717-19.  Further, the Court finds the $525,000 award to be relatively modest compared to awards in other, relatively similar cases.  *See id.*; *see also Srebnik v. Dean*, 2007 WL 2422146, at *4 (D. Colo. Aug. 22, 2007); *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d at 1158-60; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 860-66 (E.D. Mo. 2005);  *Strougo v. Bassini*, 258 F. Supp. 2d. 254, 263-64 (S.D.N.Y. 2003).  The Court therefore concludes that $525,000 constitutes fair compensation to Plaintiff's counsel for their work in this case.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Unopposed Motion for Final Approval of Derivative Action Settlement (ECF No. 89) is GRANTED;

2. The Settlement Agreement (ECF No. 81-1) is fully and finally APPROVED;

3.    Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Reimbursement

of Expenses (ECF No. 90) is GRANTED; and

4.    The Court AWARDS Plaintiff's counsel $525,000 in attorneys' fees and

expenses.

Dated this 26th day of August, 2014.

BY THE COURT:

William J. Martinez
United States District Judge

11